## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARCUS CAMACHO,** | : | |
| *Petitioner* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **BARRY SMITH** *et al.,* | : | **No. 20-3599** |
| *Respondents* | : | |

## MEMORANDUM

PRATTER, J.                                                                NOVEMBER 15, 2021

Convicted in state court, Marcos Camacho seeks habeas relief in federal court. But he did not raise his claims in the state court first, and his constitutional claims have no merit. Thus, the Court will adopt the Report and Recommendation of Magistrate Judge Timothy Rice and deny Mr. Camacho's petition.

### BACKGROUND

#### A.  The Convictions

Mr. Camacho was convicted of raping three women and attempting to rape a fourth in Philadelphia. *Commonwealth v. Camacho*, 1925 EDA 2013, 2015 WL 6168285, at *1 (Pa. Super. Feb. 23, 2015). Three of the women, all addicted to drugs and working as prostitutes, shared similar stories: Driving a white Volkswagen Jetta, Mr. Camacho propositioned each woman. The woman got into the car, and Mr. Camacho drove a few blocks away. He then stopped the car and, wielding a knife, raped her (or attempted to). *Id.* at *2–4. The fourth woman said that Mr. Camacho saw her walking alone and then forced her into his car, where he held a knife to her throat while he raped her. *Id.* at *4–5.

The police arrested Mr. Camacho, who admitted that he "drives around and picks up prostitutes" but "insisted that he doesn't force them to do anything they don't want to do." *Id.* at

7. He also admitted that he sometimes carried on a knife on him, but claimed "he never brandished it." *Id.*

Mr. Camacho had three trials: The first two resulted in mistrials due to hung juries. In the third, he was convicted and sentenced to 50 to 100 years in prison. *Id.* at *1. The Superior Court affirmed his conviction and sentence. *Id.* Mr. Camacho did not appeal to the Pennsylvania Supreme Court.

### B.  State Habeas

Mr. Camacho filed a *pro se* petition under Pennsylvania's Post Conviction Relief Act. The court hearing his PCRA petition appointed counsel to represent him. His counsel then requested to withdraw under *Commonwealth v. Turner*, 544 A.2d 927, 928–29 (Pa. 1988), asserting that he did not see any merit in Mr. Camacho's petition. The PCRA court granted that motion and then dismissed the petition. Mr. Camacho, representing himself, appealed that dismissal to the Superior Court.

Though Mr. Camacho filed a statement of errors in the Superior Court, he never filed a brief. So the Superior Court dismissed his appeal. Mr. Camacho moved for another extension, and the Superior Court reinstated his appeal. When Mr. Camacho again failed to submit a brief, after yet another extension, the Superior Court once again dismissed his petition. Doc. No. 8-3.

### C.  Federal Habeas

Mr. Camacho then filed this federal habeas petition. 28 U.S.C. § 2254. In his Report and Recommendation, Magistrate Judge Rice found that Mr. Camacho had procedurally defaulted his claims, which were meritless anyways. Doc. No. 10. Mr. Camacho filed objections, which the Court later deemed timely. Doc. Nos. 12–13. The Commonwealth did not respond to Mr. Camacho's objections.

## LEGAL STANDARDS

Federal courts can hear habeas petitions from prisoners in state court, but only in limited circumstances. The prisoner must first have "exhausted the remedies available in" state court. § 2254(b)(1)(A). If a prisoner misses an important procedural step in state court, and the state court refuses to hear the petition on its merits because of it, the prisoner has procedurally defaulted his claims. *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). Because the prisoner "failed to meet the State's procedural requirements," he "has deprived the state courts of an opportunity to address the merits of those claims in the first instance." *Id.* (internal quotation marks omitted). Thus, the state court's denial "based on an adequate and independent state procedural rule" precludes federal review. *Id.*

To overcome this procedural default, the prisoner must show that he had good "cause" for his failure to follow state procedures and that he experienced "prejudice" from the underlying constitutional violation. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Otherwise, the prisoner must show that it would be a "fundamental miscarriage of justice" for the federal court not to hear his petition because he is "probably" "innocent." *Id.* at 748 (internal quotation marks omitted).

## DISCUSSION

Magistrate Judge Rice's Report and Recommendation found that Mr. Camacho's claims were procedurally defaulted because he did not exhaust his remedies in Pennsylvania's courts. The R&R further found that, even if the Court were to overlook that default, Mr. Camacho's claims would fail on their merits. This Court agrees and adopts the R&R in full.

### I.     Mr. Camacho procedurally defaulted his claims

Mr. Camacho did not raise his current complaints on direct appeal. *Camacho*, 2015 WL 6168285, at *1. And though Mr. Camacho started a request for post-conviction relief, he did not finish it: he submitted a list of claimed errors but no brief explaining *why* they were errors. So the PCRA court dismissed his appeal. *See* 210 Pa. Code § 2188. Mr. Camacho's failure to follow that procedural rule is a complete bar to having his case heard on the merits. For this Court cannot "consider claims that a state court refused to hear based on an adequate and independent state procedural ground." *Davila*, 137 S. Ct. at 2062. Mr. Camacho does not contest this, instead claiming that he can overcome this procedural default. But he has not carried his burden.

### A.  Mr. Camacho has not shown that he is probably innocent

To start, Mr. Camacho asserts that it would be "a fundamental miscarriage of justice" not to hear his claim on the merits. *Coleman*, 501 U.S. at 750. He presents what he considers to be "new reliable evidence" of his actual innocence. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). This new evidence is an "unverified statement" from another man claiming he was detained, but not charged, for "rape [of] a prostitute." Doc. No. 13, at 2–3, Ex. A. The man says he was questioned by police because there had been "reports of rape on prostitutes" in Philadelphia's Kensington neighborhood and the victims had identified the perpetrator as "a person like me[,] [H]ispanic or Mexican driving a 1999 VW Jetta." Doc. No. 13, Ex. A. At most, this statement shows that the police stopped at least one other man driving a similar car in their search for the perpetrator, reflecting that Mr. Camacho was not targeted or singled out by the police. It does not prove that Mr. Camacho is "probably" "actually innocent" of the rapes of which he was convicted. *Coleman*, 501 U.S. at 748. Thus, Mr. Camacho has not shown it would be a miscarriage of justice to decline to decide his claims on the merits.

**B.  Mr. Camacho has not shown cause or prejudice**

Mr. Camacho also tries to show that he had good cause for his default and that the constitutional errors he identifies actually prejudiced him. *Coleman*, 501 U.S. at 750.

> **i.      Mr. Camacho cannot rest on the other man's statement to show cause and prejudice**

To start, Mr. Camacho claims that he could not raise his claims earlier because prosecutors did not turn over this "potentially exculpatory" information that police had questioned another man and his trial counsel had failed to look for such evidence. Doc. No. 13, at 3–4. If a prosecutor fails to turn over material exculpatory evidence, that can count as good cause for the defendant not raising a claim based on that evidence. *Strickler v. Greene*, 527 U.S. 263, 283 (1999). But the defendant must still show prejudice from the prosecutor's failure—that is, the defendant must show "a reasonable probability that the result of the trial would have been different if the suppressed documents had been disclosed to the defense." *Id.* at 289 (internal quotation mark omitted). Likewise, trial counsel's failure to investigate can sometimes count as good cause sufficient to overcome a procedural default. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). But that failure must have been so glaring as to amount to ineffective assistance of counsel. In other words, no reasonable trial counsel would have made the same decision not to investigate further, and "but for" the failure to investigate, "there is a reasonable probability that ... the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).

Even assuming that the prosecutors did withhold this information or that his counsel failed to investigate (Mr. Camacho has provided proof of neither), Mr. Camacho has not shown a reasonable probability that the jury would have acquitted him if he had shown them that the police questioned another man about the same crimes. *Strickler*, 527 U.S. at 295. To the contrary, there was "considerable" other evidence linking Mr. Camacho to the crime. *Id.* at 293. The four victims

all identified him as the perpetrator. *Camacho*, 2015 WL 6168285, at *3–5. Two remembered his license plate number. *Id.* at *3, 5. Plus, DNA taken from semen found in the fourth victim matched Mr. Camacho. *Id.* at *6. Proof that the police questioned another man and then released him does not "put the whole case in such a different light as to undermine confidence in the verdict." *Strickler*, 527 U.S. at 290.

Besides, even if Mr. Camacho could show prejudice, that would excuse, at most, the procedural default of his *Brady* claim. But Mr. Camacho must show cause and prejudice for *each* of his claims. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). The prosecutors' alleged failure to hand over information on other suspects in no way prevented Mr. Camacho from presenting his other constitutional claims to state court.

### ii.   Mr. Camacho cannot blame former counsel for his failure to file a brief while *pro se*

For his other claims, Mr. Camacho asserts that he had cause because "all prior counsel[ ]" were constitutionally ineffective. Doc. No. 13, at 4. Habeas counsel's failure to raise a claim does not usually count as cause for a procedural default. *Coleman*, 501 U.S. at 752. Prisoners have "no constitutional right to an attorney in state post-conviction proceedings" and thus no constitutional right to effective assistance from post-conviction counsel. *Id.*

That said, habeas counsel's deficient performance can count as cause for a state prisoner's failure to exhaust an ineffective-assistance-of-counsel claim in an initial state habeas proceeding. *Martinez v. Ryan*, 566 U.S. 1, 10 (2012). But for this limited exception to apply, the procedural default must have been caused *by* habeas counsel. Once his appointed habeas counsel withdrew, with the permission of the court, Mr. Camacho chose to appeal the PCRA's dismissal *pro se*. Thus, it was Mr. Camacho, not his habeas counsel, who failed to file a brief with the Superior Court.

In some situations, not having an attorney might count as cause for a prisoner's failing to raise an ineffective-assistance-of-counsel claim at the initial habeas proceeding. *Id.* at 14. "The prisoner, unlearned in the law," might not know how to "comply with the State's procedural rules." *Id.* at 12. But Mr. Camacho has asserted no such misunderstanding here. Nor can he. Though the Superior Court repeatedly told him to file a brief and gave him multiple extensions to do so, he completely failed to perform this basic task. Because Mr. Camacho can blame no one but himself for his procedural default, he has not shown cause. *See Siluk v. Beard*, 395 F. App'x 817, 820 (3d Cir. 2010) (finding no cause for procedural default where prisoner argued that "he was forced to proceed with his PCRA petition pro se" and so "had little or no chance of complying with" the state's procedural rules) (internal quotation mark omitted).

## II.      Mr. Camacho's claims fail on their merits

In his petition, Mr. Camacho raised many constitutional claims. The R&R found each meritless. In his objections, Mr. Camacho continues to claim violations of the Fifth, Sixth, Tenth, and Fourteenth Amendments. For the claims that he objects to, the Court reviews them "de novo." 28 U.S.C. § 636(b)(1)(C). For the others, the Court looks for plain error. *Nara v. Frank*, 488 F.3d 187, 196 (3d Cir. 2007). Having examined each, the Court adopts the R&R's recommendations in full.

### A. Mr. Camacho has not shown that prosecutors violated *Brady*

First, Mr. Camacho complains that the prosecutors did not tell him or his defense attorney that police had questioned another man for the same crimes. Doc. No. 1, at 7; Doc. No. 13, at 3. Even if true, that does not amount to a *Brady* violation. To be sure, prosecutors must hand over all "material" exculpatory evidence to the defense. *Brady v. Maryland*, 373 U.S. 83, 87–88 (1963). But, as explained above, this information about the other man is not material; Mr. Camacho has

not shown a reasonable probability that he would have been acquitted if he had shown the jury that

the police questioned, then released, this other man in the course of investigating these crimes. *See*

*Giglio v. United States*, 405 U.S. 150, 154 (1972) ("[The Constitution does not] automatically

require a new trial whenever a combing of the prosecutors' files after the trial has disclosed

evidence possibly useful to the defense but not likely to have changed the verdict . . . .") (internal

quotation marks omitted)). Thus, this claim has no merit.

### B. Mr. Camacho has not shown that his trial counsel was ineffective

Next, Mr. Camacho calls his trial counsel ineffective in dealing with the evidence against

him at trial. But he has not shown that his counsel's tactical decisions were unreasonable or

unschooled. *Strickland*, 466 U.S. at 687–88. Nor has he shown a "reasonable probability" that, had

counsel done what Mr. Camacho now demands, Mr. Camacho would have been acquitted. *Id.* at

694.

First, Mr. Camacho faults his counsel for not pressing the point at trial that "the victims

described being raped by a Hispanic male, but [he] is Mexican." Doc. No. 13, at 5. By definition,

"Hispanic" means a "Spanish-speaking" person of Mexican or other "Latin-American descent

living in the United States." *Hispanic* (def. A(2)), *Oxford English Dictionary* (2021); *accord*

*Hispanic* (def. 2), *Merriam-Webster Unabridged Dictionary* (2021). Therefore, no reasonable

lawyer would have made that argument as posed by Mr. Camacho.

Second, Mr. Camacho asserts that his counsel let the prosecutors off the hook of "proving

each and every element beyond a reasonable doubt" when counsel stipulated that the DNA found

in one of the victims belonged to him. Doc. No. 13, at 15. Yet that was a reasonable trial strategy.

For three of the women, there was no direct physical evidence tying Mr. Camacho to the rapes. To

corroborate that, Mr. Camacho "repeatedly testified that he did not know" those women and had

"never had sex with them." *Camacho*, 2015 WL 6168285, at *7. His DNA was found in semen on the fourth woman. But he claimed that he had "twice engaged in *consensual* sex" with her in exchange "for money and cocaine." *Id.* (emphasis added). Given Mr. Camacho's explanation, counsel reasonably decided to stipulate that the DNA belonged to Mr. Camacho, rather than put on scientific testimony arguing that the exact DNA match was an error and thus undermine Mr. Camacho's testimony.

Next, Mr. Camacho emphasizes that one of the victims said her attacker drove a white Volkswagen Jetta with the license plate HV*D*5131, while his license plate was HV*P*5131. The police traced the license plate HVD5131 to an address in Norristown, Pennsylvania, but did not locate the owner. *Camacho*, 2015 WL 6168285, at *6. Per Mr. Camacho, his trial counsel should have done more to look into this other driver. Yet counsel could have reasonably concluded that investigating this other driver "would be fruitless." *Strickland*, 466 U.S. at 691. The victim was off by just one letter, and she later identified both Mr. Camacho as the rapist and his car as the site of the rape. *Camacho*, 2015 WL 6168285, at *7. There is no suggestion that the HVD5131 plate was on a white car, let alone a white Volkswagen Jetta. Plus, DNA from semen found in the victim matched Mr. Camacho. *Id.* at *6. Counsel was not unreasonable for not pursuing this avenue of investigation.

Finally, Mr. Camacho complains that his counsel did not make more of the fact that just two of the women had "positively identified him [in] earlier police line-ups." *Camacho*, 2015 WL 6168285, at *12. Even assuming that counsel should have emphasized that point more, Mr. Camacho has not shown a reasonable probability that the verdict against him would have been different if counsel had done so. Three of the women had picked him out of an earlier photo array. *Id.* at *7. All four provided the same description of him and his white Volkswagen Jetta

immediately after the rapes. *Id.* at *12. And all four identified him at trial, in testimony that "was remarkably consistent and factually[] accurate." *Id.* Thus, Mr. Camacho has not shown that this strategy would have made any difference.

For these reasons, Mr. Camacho's ineffective-assistance-of-counsel claim fails.

## C. The convictions did not violate the Tenth Amendment

Mr. Camacho also posits that the federal government has "usurped" the state government's criminal powers by "requiring" states to arrest more people in exchange for "untold billions or trillions of misappropriated federal funds." Doc. No. 13, at 13–14. For example, the Sex Offender Registration and Notification Act "overrid[es] sovereign state police power" because it requires states to comply or else lose "10 percent of overall federal funding." Doc. No. 13, at 15. Thus, Mr. Camacho argues, his convictions violated the Tenth Amendment.

True, SORNA requires that states set up compliant sex-offender registries or lose "10 percent of" their funds from a criminal-justice grant program. 34 U.S.C. § 20927(a). But Congress has broad power to set conditions on its funding, so long as those conditions are not "coercive." *South Dakota v. Dole*, 483 U.S. 203, 206–08, 210–11 (1987). SORNA simply provides that a state that does not comply will "lose a relatively small percentage of certain federal ... funds." *Id.* at 211. Thus, SORNA is not coercive, and it does not violate the Tenth Amendment. *See United States v. White*, 782 F.3d 1118, 1128 (10th Cir. 2015) (collecting cases). Nor do the other "[f]ederal omnibus crime bills" that Mr. Camacho criticizes. Doc. No. 13, at 13.

Even if the federal government had coerced the states into arresting and imprisoning more people, that would still be no defense to Mr. Camacho's convictions. For Mr. Camacho has not plausibly pled that Pennsylvania would not have criminalized and prosecuted rape absent coercion

from the federal government. To the contrary, Pennsylvania has forbidden rape since 1682, well before the creation of the United States. The Great Law of 1682 ch. 12 (Dec. 7, 1682).

Relatedly, Mr. Camacho labels his trial counsel ineffective for failing to make the "jurisdictional-based defense" that, because of this Tenth Amendment violation, Pennsylvania did not have jurisdiction to try him. Doc. No. 13, at 16. Yet Pennsylvania has jurisdiction over all crimes committed "within [the] Commonwealth," including these. 18 Pa. Cons. Stat. § 102(a). Because this defense is meritless, his trial counsel cannot be ineffective for failing to raise it. *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999).

### D. The sentencing court did not violate *Apprendi*

Juries decide guilt; judges set the punishment. Though judges have broad discretion to decide sentences, that sentence must still fall within certain limits. For example, the sentencing judge cannot impose a sentence beyond the maximum punishment set by statute, or increase a mandatory minimum, unless the jury has found facts to support such an increase. *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000); *Alleyne v. United States*, 570 U.S. 99, 103 (2013). Mr. Camacho complains that he was sentenced "based on additional factfinding by the sentencing judge." Doc. No. 13, at 17.

Yet sentencing judges find facts all the time. They must, for each sentence must reflect an "individualized assessment" of the defendant's particular crime, history, and characteristics. *Gall v. United States*, 552 U.S. 38, 50 (2007); 18 U.S.C. § 3553(a). What sentencing judges cannot do is find facts to impose a sentence outside the statutory range found by the jury. Certainly, the sentencing judge did not do that here. The jury, by deciding to convict Mr. Camacho of rape, attempted rape, sexual assault and possessing an instrument of crime, and driving under the influence, set a statutory range of up to 140 years in prison. The sentencing court then had to find

facts to decide the appropriate sentence within that range. *Apprendi*, 530 U.S. at 481. The sentencing court did just that, sentencing him to 50 to 100 years in prison. *Camacho*, 2015 WL 6168285, at *14–16.

Mr. Camacho also faults his trial counsel for not mentioning this *Apprendi* claim. But because this claim fails on the merits, counsel was not ineffective for failing to raise it. *Sanders*, 165 F.3d at 253.

### E. Mr. Camacho was not subject to double jeopardy

In general, defendants may not be tried more than once for the same offense. U.S. Const. amend. V. But sometimes trials get interrupted, and judges must declare mistrials. In most cases, a mistrial does not bar a future prosecution. For example, if a jury cannot reach a verdict, the trial court will declare a mistrial based on "manifest necessity," for "justice would … be defeated" without a final decision on the merits. *United States v. Perez*, 22 U.S. 579, 580 (1824). As "[t]he prisoner has not been convicted or acquitted," he "may again be put upon his defence." *Id.*

Mr. Camacho was tried three times. The first two were declared mistrials because the juries did not reach a unanimous verdict. Doc. No. 8, at 2 n.1. According to Mr. Camacho, because he did not *request* that the trial court call the mistrials, prosecutors could not retry him. Doc. No. 13, at 22–23. But trial courts can declare mistrials for hung juries even "over the objection of the defendant," so long as the court deems it a manifest necessity. *Arizona v. Washington*, 434 U.S. 497, 505 (1978). Mr. Camacho has not explained how the trial court here abused its "broad discretion in deciding" that "'manifest necessity' justifie[d] a discharge of the jur[ies]" when they could not reach unanimous verdicts. *Id.* at 509.

### F. Mr. Camacho has not pled that prosecutors racially discriminated against jurors

Renewing his *Batson* claim, Mr. Camacho objects that he did not have "one single juror of Mexican or Hispanic descent serving of any of the juries" that tried him. Doc. No. 13, at 24. But the Constitution does not guarantee jurors of the same race as the defendant. *Batson v. Kentucky*, 476 U.S. 79, 85 (1986). Instead, it prohibits *discriminating* against potential jurors based on their race. *Id.* at 85–86. As the R&R explained, Mr. Camacho still has not pled, much less shown, that prosecutors struck a potential juror based on their race. Doc. No. 10, at 8. And because Mr. Camacho has not shown that this claim has any merit, he cannot call his counsel ineffective for failing to raise it. *Sanders*, 165 F.3d at 253.

## CONCLUSION

Mr. Camacho has failed to raise any meritorious constitutional claims. Plus, he procedurally defaulted his claims. Despite this, he insists that the Court should be particularly hesitant to dismiss his petition, because it is his first. Doc. No. 13, at 2. Likewise, Mr. Camacho insists that the Court must construe his petition liberally because he represents himself. Though the Court reads *pro se* submissions generously, prisoners must still meet the requirements for habeas relief, first petition or not. Mr. Camacho has not met those requirements.

The Court thus overrules Mr. Camacho's objections and adopts the R&R in full. Because reasonable jurists would not "find it debatable" that Mr. Camacho procedurally defaulted his meritless claims, the Court will not issue a certificate of appealability. *Slack v. McDaniel*, 529 U.S. 473, 478 (2000). An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE